```
         IN THE UNITED STATES DISTRICT COURT FOR THE
                    EASTERN DISTRICT OF OKLAHOMA
```

LLONDA JONES,                    )
                                 )
            Plaintiff,           )
                                 )
v.                               )    Case No. CIV-14-178-JHP-KEW
                                 )
CAROLYN W. COLVIN, Acting        )
Commissioner of Social           )
Security Administration,         )
                                 )
            Defendant.           )

## REPORT AND RECOMMENDATION

Plaintiff Llonda Jones (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be AFFIRMED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or

impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

2

(10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

**Claimant's Background**

Claimant was born on May 5, 1966 and was 46 years old at the time of the ALJ's decision. Claimant completed her high school education. Claimant has worked in the past as a certified nurse's assistant, central supply worker, and die cutter. Claimant alleges an inability to work beginning November 1, 2009 due to limitations resulting from panic disorder, anxiety, depression, and left leg and foot problems.

**Procedural History**

On August 11, 2010, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) and for supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's applications were denied initially and upon reconsideration. On September 17, 2012, an administrative hearing was held before Administrative Law Judge ("ALJ") James Bentley by video with the Claimant appearing in Poteau, Oklahoma and the ALJ presiding in McAlester, Oklahoma. On October 26, 2012, the ALJ issued an unfavorable decision on Claimant's applications. The Appeals Council denied review of the ALJ's decision on April 15, 2014. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, she retained the RFC to perform light work with limitations.

**Error Alleged for Review**

Claimant asserts the ALJ committed error in (1) rejecting the

opinion of Ms. Kari Dry, LPC; and (2) rejecting the opinion of a treating physician, Dr. Ben Cheek.

### Evaluation of Ms. Dry's Opinion

In his decision, the ALJ determined Claimant suffered from the severe impairments of depressive/anxiety disorders and left foot problems. (Tr. 14). The ALJ also found Claimant retained the RFC to perform light work except due to psychological factors, she was limited to simple tasks with routine supervision where interpersonal contact with supervisors and co-workers was only occasional and where contact with the general public was also no more than occasional. He also found Claimant required a sit/stand option to allow for temporary change in postural position every hour in addition to normal breaks. He further determined Claimant was unable to climb ladders and scaffolds, unable to kneel, crouch, or crawl, must not be exposed to unprotected heights or moving machinery, and was unable to operate controls with her left foot. (Tr. 17). After consultation with a vocational expert, the ALJ found Claimant could perform the representative jobs of packager, bakery worker, and assembler, which he testified existed in sufficient numbers in the regional and national economies. (Tr. 28). As a result of these findings, the ALJ determined Claimant was not disabled from November 1, 2009 through the date of the

decision. Id.

Claimant first contends the ALJ improperly rejected the opinion of Ms. Kari Dry, LPC (Licensed Professional Counselor). On July 26, 2012, Ms. Dry completed an intake form concluding Claimant suffered from major depression, recurrent, moderate and anxiety disorder. She assessed Claimant's GAF at 55, noting the severity level of Claimant's condition was "moderate." (Tr. 390). Claimant was admitted for individual and group therapy and for case and pharmacological management. (Tr. 392).

On August 15, 2012, Ms. Dry completed a mental RFC assessment form on Claimant. She found Claimant had "no useful ability to function on a sustained basis" (defined as an 8 hour workday for five days in a full work week). She found Claimant could not remember locations and work-like procedures; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, or be punctual within customary tolerances; make simple work-related decisions; complete a normal workday and workweek without interruptions from psychologically based symptoms; perform at a consistent pace without an unreasonable number and length of rest periods; interact appropriately with the general public; accept instructions and respond appropriately to criticism from supervisors; get along with

6

co-workers or peers without distracting them or exhibiting behavioral extremes; respond appropriately to changes in the work setting; behave in an emotionally stable manner; relate predictably in social situations; demonstrate reliability; work without deterioration or decompensation causing the individual to withdraw from the situation; and work without deterioration or decompensation causing exacerbation of symptoms or adaptive behaviors. (Tr. 355).

The ALJ determined Ms. Dry's opinion was entitled to "no weight." (Tr. 19). He classified Ms. Dry as a "non-acceptable medical source" which was not entitled to controlling weight. Id. While Ms. Dry is clearly not an acceptable medical source, the ALJ is still required to consider the opinion of a professional who is not an acceptable medical source and state specific, valid reasons for the rejection of the opinion. Soc. Sec. R. 06-3p. The ALJ justified his rejection of the opinion in stating (1) Claimant's representative ostensibly directed Claimant to obtain the RFC assessment from Ms. Dry for the sole purpose of obtaining a statement in support of Claimant's application for disability payments; (2) Ms. Dry did not describe her relationship with Claimant as the medical record indicates she saw Claimant only days before completing the RFC assessment form; (3) no supportive

7

treatment records were offered into evidence so Ms. Dry's RFC assessment is without supportive medical evidence; and (4) the RFC form itself requires that Ms. Dry's opinion be co-signed by an M.D. or Ph.D. and Claimant's form was not co-signed by any acceptable medical source. (Tr. 18-19). The ALJ's foundational basis for rejecting Ms. Dry's opinion are all valid. Ms. Dry only attended Claimant shortly before proffering the dismal outlook represented in the RFC assessment form. Moreover, no treatment records support the opinion. Claimant's attorney acknowledged the need for such records and indicated they would be obtained. (Tr. 37-38). The ALJ agreed to hold the record open to supplement the evidence with her treatment records but they were never submitted. (Tr. 72). Finally, the ALJ's reduction in the weight afforded Ms. Dry's opinion was justified by the failure to obtain a review and a confirmation signature of a credentialed medical professional. This Court finds no error in the ALJ's consideration of Ms. Dry's opinion.

### Evaluation of Dr. Cheek's Opinion

Claimant also contends the ALJ did not properly consider the opinion of Dr. Ben F. Cheek. On August 14, 2012, Dr. Cheek completed a medical source statement on Claimant. He determined Claimant could frequently lift/carry less than 10 pounds,

occasionally lift/carry 10 pounds, stand and/or walk a total of 2 hours in an 8 hour workday and continuously for only 30 minutes before taking a break, sit a total of 8 hours in an 8 hour workday and continuously for 2 hours before taking a break, could engage in unlimited pushing and pulling, would require 5 or more breaks in an 8 hour workday, and could perform for 4 hours any work activities in a normal workday. Dr. Cheek found Claimant's limitations were brought about by chronic foot pain and anxiety. (Tr. 339-40).

Dr. Cheek noted Claimant could climb, balance, squat, crouch, or stoop less than 2 hours in an 8 hour workday and could kneel and bend 2 hours in an 8 hour workday. Claimant was not found to have any manipulative limitations. Claimant was to avoid concentrated exposure to extreme cold, extreme heat, wetness, humidity, noise, vibration, fumes, odors, or dusts, gases and poor ventilation, and hazards. The principal laboratory findings which supported the limitations was found to be foot pain. The assessment included the time period from March of 2012 and continuing. (Tr. 340-41).

The ALJ extensively discussed the content of Dr. Cheek's assessment but determined his opinion was not supported by appropriate clinical findings and, therefore, found it was not entitled to any weight. (Tr. 22). He determined Dr. Cheek was not a treating source and his opinion was not entitled to controlling

9

weight as he attended Claimant once in March of 2012, once in April of 2012, and an appointment to complete the RFC form "for her attorney" in August of 2012. (Tr. 19).

A "treating source" is defined under the regulations as an "acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you." 20 C.F.R. § 404.1502. An "ongoing treatment relationship" is one where "you see, or have seen, the source with a frequency consistent with the accepted medical practice for the type of treatment and/or evaluation required for your medical condition(s)." Id. "A physician's opinion is deemed entitled to special weight as that of a 'treating source' when he has seen the claimant 'a number of times and long enough to have obtained a longitudinal picture of [the claimant's] impairment,' taking into consideration 'the treatment the source has provided' and 'the kinds and extent of examinations and testing the source has performed or ordered from specialists and independent laboratories.'" Doyal v. Barnhart, 331 F.3d 758, 763 (10th Cir. 2003) quoting 20 C.F.R. § 416.927(d)(2)(i),(ii).

On March 27, 2012, Claimant first saw Dr. Cheek, presenting with foot pain, leg pain, and anxiety. After reciting Claimant's medical history and examination findings, Dr. Cheek prescribed

10

medication for "nervousness" and a Medrol dose pack. (Tr. 371). He also recommended that Claimant quit smoking, engage in a graduated exercise program, and lose 20 pounds. Id.

On April 27, 2012, Dr. Cheek conducted a follow up examination for anxiety and foot and leg pain. He made similar findings from the first visit but prescribed an additional medication for anxiety. (Tr. 366-68).

On August 14, 2012, Claimant saw Dr. Cheek for the third and last time. Her purpose for seeing the physician was that she presented with leg pain and needed "forms filled out for her attorney." (Tr. 362). His treatment notes contain Claimant's medical history but little in the form of assessment and treatment save and except for a detailed recitation of a functional analysis for an RFC evaluation. Indeed, the sum total of his treatment recommendations continued to be a graduated exercise program, 20 pound weight loss, and to quit smoking. (Tr. 364-65).

Based upon these few contacts and the limited services that were rendered by Dr. Cheek, this Court cannot conclude that the ALJ erred in finding this physician failed to qualify as a treating source. The duration, frequency, and nature of the relationship was simply insufficient to warrant a finding that Dr. Cheek constituted a treating physician. As such, his opinion was not

entitled to controlling weight.

Moreover, Dr. Cheek's notes did not support the extent of debilitating limitations which he found in his source statement. He noted tenderness in the left pedal surface, crepitus but no clubbing, cyanosis or evidence of ischemia or infection. Claimant had a normal gait. (Tr. 370). Again, Dr. Cheek's prescribed treatment included an exercise program, weight loss, and cessation of smoking. (Tr. 371).

Additionally, the other medical evidence of record did not support the level of restriction urged by Dr. Cheek. On February 9, 2010, Dr. Keith Bolyard found Claimant had tenderness at the plantar aspect of the foot. She had normal dorsalis pedis and posterior tibialis pulses. She also had a normal peroneal, posterior tibialis, anterior tibialis, and triceps seri complex tendonus exam. X-rays revealed a preservation of longitudinal arch, no arthritic changes and a small plantar spur. (Tr. 290).

On May 19, 2011, Dr. Sharad Swami noted Claimant had plantar fasciitis of the left foot. He found she experienced left heel tenderness, Achilles tendon tenderness, decreased peripheral pulses and dusky color. Dr. Swami recommended Claimant stop smoking but Claimant was not interested and was upset. She refused a nicotine patch. He also advised her to regularly exercise and stretch but

Claimant was not interested in Plavix or blood pressure medicine. (Tr. 353). Neither of these examinations resulted in the physicians finding or suggesting the level of restriction found by Dr. Cheek in his source statement.

The ALJ also found Dr. Cheek was not a specialist, only provided conservative treatment, and his opinion was internally inconsistent. Dr. Cheek found Claimant could sit for 8 hours in an 8 hour workday but also found Claimant could not sit, stand, or walk in combination for 8 hours in an 8 hour workday. (Tr. 21, 339, 341). Based upon these valid justification for rejecting Dr. Cheek's opinion, this Court finds no error in the ALJ's assessment of the opinion or finding that it was entitled to any weight.

## Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **AFFIRMED**. The parties are herewith given fourteen (14) days from the date of the service of these Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate

review of this decision by the District Court based on such findings.

DATED this 20th day of July, 2015.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE